## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIMBERLY DAY-LEWIS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| U.S. EQUAL EMPLOYMENT | : | |
| OPPORTUNITY COMMISSION, et al. | : | NO.  12-2638 |

## MEMORANDUM

RESTREPO, J.                                                     SEPTEMBER 16, 2014

Plaintiff, Kimberly Day-Lewis, brings this civil action against defendant, Jacqueline A. Berrien, Chair of the U.S. Equal Employment Opportunity Commission ("EEOC"),[1] alleging discriminatory conduct on the bases of plaintiff's race, age, and gender, as well as retaliation against her for engaging in protected activity.  Specifically, plaintiff's Complaint alleges: (1) racial discrimination pursuant to Title VII of the Civil Rights Acts ("Title VII") (Count I), 42 U.S.C. § 2000e-2; (2) gender discrimination pursuant to Title VII (Count II); (3) an unequal pay claim pursuant to the Equal Pay Act, 29 U.S.C. § 206 (Count III); (4) age discrimination (disparate treatment) pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621(Count IV); and (5) retaliation pursuant to Title VII (Count VI).[2]

---

[1] Although plaintiff's Complaint identifies the EEOC as the defendant, upon stipulation of the parties, Jacqueline A. Berrien has been substituted as the defendant in this case.  *See* Pl.'s Mot. to Substitute Real Party in Interest (ECF Document 16) ¶ 3 (confirming stipulation of counsel); Order filed 9/20/12 (naming Jacqueline A. Berrien as defendant) (Doc. 17).

[2] Count V of the Complaint alleges a claim for age discrimination (disparate impact) under the ADEA, *see* Pl.'s Compl. ¶¶ 213-17, but at oral argument plaintiff's counsel agreed to the dismissal of Count V in its entirety, *see* Tr. Oral Arg. 1/30/14 (hereinafter cited as "Oral Arg."),

1

Before the Court are Plaintiff's Motion for Partial Summary Judgment (Doc. 37),

defendant's opposition thereto (Doc. 45), Defendant's Motion for Summary Judgment (Doc. 39),

plaintiff's opposition thereto (Doc. 46), and the parties respective reply briefs (Docs. 57, 58).[3]

Plaintiff's motion requests partial summary judgment in her favor on her claims of race, age, and

gender discrimination and on her wage discrimination claim under the Equal Pay Act.  *See* Pl.'s

Br. Supp. Pl.'s Summ. J. Mot. (herein cited as "Pl.'s Br.") 20.  Defendant's motion requests

summary judgment on the bases that the Court lacks jurisdiction over: (1) plaintiff's pay-based

claims brought under Title VII, the ADEA, and the Equal Pay Act in that plaintiff irrevocably

elected to raise and resolve those claims through a grievance procedure; (2) plaintiff's Equal Pay

Act Claims because 28 U.S.C. § 1346(a)(2) bars the Court from exercising jurisdiction over such

claims seeking in excess of $10,000; and (3) plaintiff's claims related to the rescission of her

4/10 work schedule[4] and the lowering of her 2010 performance evaluations in that plaintiff

similarly elected to pursue those matters through a negotiated grievance process.[5]  Defendant

further contends that plaintiff failed to timely exhaust administrative remedies for her non-

selection and schedule-related claims, and in any event, that there is no genuinely triable dispute

---

at 82 (agreeing that "Count 5 is out all together," plaintiff's counsel confirmed that "we will
agree to dismiss Count 5").

[3]Although this case was originally assigned to the Hon. Eduardo C. Robreno, it was
subsequently reassigned to my calendar.

[4]A 4/10 schedule is a schedule which allows for an employee to work four 10-hour days
in a pay week and has the fifth day off.  *See* Pl.'s Dep. 69, 70 (JA 274); Dep. of Reuben Daniels,
Jr. at 149 (JA 152); Collective Bargaining Agree. ("CBA") § 30.04(d)(2) (JA 718).

[5]In support of their respective motions and opposition thereto, the parties have submitted
a Joint Appendix composed of the parties' supporting exhibits (herein cited as "JA").

on plaintiff's claims of discrimination and retaliation.  For the reasons that follow, defendant's

motion is granted in part and denied in part, and plaintiff's motion is denied.


1.  LEGAL STANDARD

Defendant's claims alleging lack of subject-matter jurisdiction are raised under Rule

12(b)(1) of the Federal Rules of Civil Procedure.  *See* Def.'s Br. Supp. Def.'s Mot. (herein cited

as "Def.'s Br.") 1-2, 3-6; *see also* Fed. R. Civ. P. 12(b)(1).  A 12(b)(1) motion may present a

facial attack or a factual attack on the claim at issue.  *Constitution Party of Pa. v. Aichele*, 757

F.3d 347, 357 (3d Cir. 2014) (citing *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d

Cir. 2012)).  A facial attack is an argument that considers a claim on its face and asserts that it is

insufficient to invoke the subject matter jurisdiction of the court because, "for example, it does

not present a question of federal law, or because there is no indication of a diversity of

citizenship among the parties, or because some other jurisdictional defect is present."  *Id.*  In

reviewing a facial attack, the Court must "consider the allegations of the Complaint and

documents referenced therein and attached thereto, in the light most favorable to the plaintiff."

*Id.* (citing *In re Schering Plough Corp.*, 678 F.3d at 243) (internal quotation marks omitted).

"A factual attack, on the other hand, is an argument that there is no subject matter

jurisdiction because the facts of the case – and here the District Court may look beyond the

pleadings to ascertain the facts – do not support the asserted jurisdiction."  *Id.*  "A factual attack

requires a factual dispute."  *Id.*  "In sum, a facial attack 'contests the sufficiency of the

pleadings,' *In re Schering Plough Corp.*, 678 F.3d at 243, 'whereas a factual attack concerns the

actual failure of a [plaintiff's] claims to comport [actually] with the jurisdictional prerequisites."

*Constitution Party of Pa.*, 757 F.3d at 357 (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (internal quotation marks omitted)).

The remaining claims raised by defendant's and plaintiff's respective motions request summary judgment under Rule 56. A party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact and that judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment has been made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). An issue is "genuine" if a reasonable jury could rule in favor of the non-moving party based on the evidence presented. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). On a motion for summary judgment, the court considers the evidence in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 256.

## 2. SUBJECT-MATTER JURISDICTION

### A. Plaintiff's Pay-Based Claims

Defendant argues that the Court lacks jurisdiction over plaintiff's Equal Pay Act, Title VII, and ADEA "pay claims," i.e. plaintiff's claims based on her being paid at the grade GS-12, step 1 level instead of being promoted or upgraded to a higher pay level. *See* Def.'s Br. 4. "Under the Civil Service Reform Act of 1978 ('CSRA'), 5 U.S.C. §§ 7101 *et seq.*, a federal employee who believes he or she has been discriminated against and whose CBA provides for a negotiated grievance procedure addressing discrimination claims, can elect to file either a

grievance under the CBA or an EEO complaint, **but not both**." *Ilgenfritz v. Hon. Robert Gates,*

*Sec'y of Dept. of Defense*, 2010 WL 2978090, *6 (W.D. Pa. 2010) (citing 5 U.S.C. § 7121(d); 29

C.F.R. § 1614.301(a)) (emph. in original).  Similarly, the relevant CBA between the union and

the EEOC, which provides "negotiated grievance procedures," provides that:

> An aggrieved employee affected by discrimination or any other
> prohibited personnel practice under 5 U.S.C. § 2302(b)(1) of the
> [CSRA] may at his/her option raise the matter under a statutory
> procedure or the negotiated grievance procedure, **but not both**.  The
> filing of a negotiated grievance under this Article [41.00] prior to
> invoking any applicable statutory procedure constitutes an election of
> the negotiated grievance procedure over any statutory procedure.
> This election occurs with the filing of a written grievance at Step 1.

(JA 727 (emph. added).)[6]  "If an employee files a timely written grievance before filing a written

EEO complaint, he (or she) has irrevocably chosen the negotiated grievance procedure, and is

precluded from filing an EEO complaint on the same matter." *Ilgenfritz*, 2010 WL 2978090, at

*6 (citing *Rosell v. Wood*, 357 F. Supp.2d 123, 128 (D. D.C. 2004)) (parenthetical added); *Am.*

*Fed'n of Gov't Employees, Local 2052 v. Reno*, 992 F.2d 331, 332 (D.C. Cir. 1993).

Accordingly, "[a]ny such complaint filed after a grievance has been filed on the same matter

shall be dismissed." 29 C.F.R. § 1614.301(a).  Defendant points out that plaintiff was such a

federal employee, and she irrevocably elected to raise and settle her pay-based claims through a

negotiated grievance procedure (JA 1088-89 (Mar. 8, 2010 Step-1 Grievance), 1140-41 (May 3,

2010 Step-2 Grievance), 1178-82 (May 21, 2010 EEO Complaint)).  *See* Def.'s Br. 4.

---

[6]Under the CBA, if a grievance is not satisfactorily resolved at Step 1, the employee or
union representative may file a written Step 2 grievance "with the District or Headquarters Office
Director."  (JA 729.)  Any issues not raised in the grievance by Step 2 are waived.  (*Id.*)  If the
Step 2 grievance is not satisfactorily resolved, the employee or union representative may file a
Step 3 grievance with the EEOC Chair or her designee.  (*Id.*)

In response, plaintiff acknowledges that "the Union filed a class grievance, with [plaintiff] serving as the class representative, to incite the EEOC to take administrative action . . . to implement the promotions and pay raises . . ." *See* Pl.'s Resp. to Def.'s Mot. (herein cited as "Pl.'s Resp. Br.") 18.  Indeed, in settlement of this class grievance, plaintiff received her promotion to the GS-13 pay grade level, the grant of her hardship transfer request to the Raleigh Area Office, and three days of administrative leave to move (JA 1167).  *See* Pl.'s Resp. Br. 18 n.26.  However, plaintiff contends that her "individual pay-based discrimination claims based on Title VII, ADEA, and the [Equal Pay Act] do not constitute the 'same matter' as the narrowly tailored matter asserted in the class grievances."[7]  *See* Pl.'s Resp. Br. 17.  According to plaintiff, "[i]n order to determine if [plaintiff] has asserted the 'same matter' of that contained in her class grievance, [plaintiff] must have included the same, identical topics in both her class grievance and her discrimination complaint."  *Id.* at 18.  Plaintiff argues that "[t]he narrowly tailored issue grieved in the Union's class grievance does not constitute the same matter as [plaintiff's] pay-based discrimination claims because the issues disputed are not **identical**."  *Id.* (emph. added).

"Too narrow a definition of 'matter' would frustrate the election provisions of § 7121(d). This in turn would undermine the CSRA's reliance on [CBAs], since clever drafting could then allow an employee to proceed both in a grievance and in an EEO complaint."  *Facha v. Cisneros*, 914 F. Supp. 1142, 1148-49 (E.D. Pa. 1996), *aff'd*, 106 F.3d 384 (3d Cir. 1996).  "'Matter under § 7121(d) has a **very broad scope** referring to the underlying employment actions at issue in the dispute."  *Gill v. Summers*, 2001 WL 283150, *3 (E.D. Pa. 2001) (emph. added).  Thus, "[t]he

---

[7]Plaintiff does not specifically dispute that assuming *arguendo* that her grievance did raise the same matter as that raised in this civil action, the Court does not have jurisdiction of those issues.

term 'matter' in 5 U.S.C. § 7121(d) and 29 C.F.R. § 1614.301(a) has been interpreted to refer to

the 'underlying [government] action' that gives rise to the grievance or complaint." *Ilgenfritz*,

2010 WL 2978090, at *7 (quoting *Rosell v. Wood*, 357 F. Supp.2d 123, 128 (D. D.C. 2004))

(citations omitted); *see Bonner v. Merit Sys. Protection Bd.*, 781 F.2d 202, 204 (Fed. Cir. 1986).

"Two complaints refer to the same 'matter' if the disputed personnel action at the root of the

employee's complaint is the same, **regardless of the legal theory on which the action is**

**challenged**." *Ilgenfritz*, 2010 WL 2978090, at *7 (quoting *Van Houten v. Gober*, 1998 WL

966021, *5 (E.D. Pa. 1998)) (emph. added); *see* 29 C.F.R. § 1614.301(a) (employee who filed a

grievance "may not thereafter file a complaint on the same matter . . . **irrespective . . . of**

**whether the grievance has raised an issue of discrimination**") (emph. added).  Thus, to the

extent that plaintiff contends that the grievance and Complaint "must have included the same,

**identical** topics" to be considered the "same matter," *see* Pl.'s Resp. Br. 18 (emph. added),

including the legal theory presented, such as claims of discrimination, plaintiff is incorrect.  *See*

*Ilgenfritz*, 2010 WL 2978090, at *7 (quoting *Van Houten*, 1998 WL 966021, at *5); *see* 29

C.F.R. § 1614.301(a).  Further, plaintiff's procedural or strategic choice to pursue her pay-based

claims as part of a class, instead of individually, through the grievance procedure is immaterial.

*See, e.g., Macy v. Dalton*, 853 F. Supp. 350, 355 (E.D. Cal. 1994) (observing that the choice of

whether to pursue a claim individually or as part of a class "is nothing more than a procedural or

strategic choice").

　　　　Although plaintiff argues that her grievance involved what she characterized as "career

ladder promotions," her March 8, 2010 grievance explicitly complained that "[plaintiff], and

others similarly situated, have not received pay commensurate with the work that they [were]

perform[ing]" (JA 1088).  The disputed personnel action in plaintiff's grievance was thus

defendant's failure to pay her (as well as others similarly situated) "commensurate[ly] with the

work" she was performing (*id.*).  Plaintiff's Complaint in this civil action also challenges the

"pay discrepancy between [plaintiff] and the other ADR Mediators" despite "perform[ing] the

same or substantially the same duties as the other ADR Mediators." *See, e.g.,* Pl.'s Compl. ¶

184(g); *see also id.* ¶ 198 (alleging "[plaintiff] was classified at a lower grade and was paid a

substantially lower wage rate for substantially equal work to that performed" by others).

Accordingly, to the extent that plaintiff's Complaint in this civil action challenges defendant's

failure to pay her a higher amount commensurately with the work that she was performing ("pay-

based claims"), plaintiff's claims are dismissed.[8]  *See Ilgenfritz*, 2010 WL 2978090, at *9

(granting defendant's motion to dismiss for lack of jurisdiction where plaintiff's grievance and

Complaint concerned the same matter).


### B.  Plaintiff's Equal Pay Act claims

Defendant argues that the Court lacks subject-matter jurisdiction over plaintiff's Equal

Pay Act claims in that plaintiff's Complaint seeks in excess of $10,000 on these claims, and the

relevant statute, 28 U.S.C. § 1346(a)(2), bars jurisdiction over such claims.  *See Tasbas v.*

---

[8]On Sept. 15, 2010, the EEOC's Office of Equal Opportunity dismissed plaintiff's May
21, 2010 EEO formal complaint in its entirety (JA 1203-07).  The agency concluded that, among
other things, the only claims that plaintiff timely brought to the attention of her EEO Counselor
were her pay-based claims, and those were barred because she had elected to pursue them
through the negotiated grievance process (*Id.*).  The agency pointed out that plaintiff's
"grievances alleged that [plaintiff], and others similarly situated, were not paid at a level
commensurate with the level of work they were performing, which, according to the Union, was
at the GS-13 level" (JA 1205) and that plaintiff "elected to pursue [her] claims related to [her]
being paid at the GS-12 level through the Agency's negotiated grievance procedures" (JA 1205).

*Nicholson*, 2009 WL 1458463, *11 (W.D. N.Y. 2009).  In response, plaintiff "stipulates to her [Equal Pay Act] claim being worth no more than $10,000," *see* Pl.'s Resp. Br. 20 n.34. Nonetheless, to the extent that plaintiff's stipulation may be construed as a request to amend the Complaint to allege that her claims under the Equal Pay Act are "worth no more than $10,000," *see id.*, plaintiff's request is denied as futile.  "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and **futility**."  *Ollie v. Brown*, 565 F. Appx. 131, 135 (3d Cir. 2014) (emph. added).  Here, for the reasons explained above, the Court lacks jurisdiction over plaintiff's Equal Pay Act claims in that she irrevocably elected to raise and settle her pay-based claims through a negotiated grievance procedure (JA 1088-89 (Mar. 8, 2010 Step-1 Grievance), 1140-41 (May 3, 2010 Step-2 Grievance), 1178-82 (May 21, 2010 EEO Complaint)).

### C.   4/10 Work Schedule and 2010 Performance Evaluation

Defendant argues that "[f]or the same reasons that plaintiff's pay-based claims are barred for want of jurisdiction because previously grieved and settled, [plaintiff's] claims arising out of her Charlotte District employment that relate to rescission of her 4/10 schedule and the '[a]rbitrar[y] lowering' of her fiscal year 2010 performance ratings" are barred "because she elected to pursue those matters through a negotiated grievance process, in which they were resolved."  *See* Def.'s Br. 6.  The local union filed with the Office of Field Programs ("OFP") Director, Nicholas M. Inzeo, a grievance on behalf of plaintiff and Employee 20 ("E20"),[9]

---

[9]The parties have agreed to refer to certain individual employees by a designated employee number rather than by name.  *See, e.g.,* Def.'s Req. for Redaction of Oral Arg. Transcript at 1 (Doc. 71).

regarding the 4/10 schedule rescissions.  *See, e.g.,* Step-2 Grievance 10/13/10 (JA 1350-51); Pl.'s Dep. 147, 148 (JA 293).  In a subsequent separate action, the local union also filed a grievance on plaintiff's behalf regarding her 2010 performance evaluation, also alleging that she had been retaliated against due to her previous grievance related to the 4/10 schedule.  *See* Step-2 Grievance 3/2/11 (JA 1419-23).  Accordingly, defendant's request to dismiss plaintiff's claims related to rescission of her 4/10 schedule and the alleged arbitrary lowering of her 2010 performance ratings is granted, since she elected to pursue and resolve those matters through a negotiated grievance process.  Those claims are therefore dismissed.

3.  **TIMELINESS OF CONTACT WITH EEO COUNSELOR ON NON-SELECTION AND SCHEDULE-RELATED CLAIMS**

Before bringing a Title VII, ADEA, or Equal Pay Act suit in federal court, a federal employee must initiate contact with an equal employment opportunity ("EEO") counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1); *see Winder v. Postmaster Gen.*, 528 Fed. Appx. 253, 554 (3d Cir. 2013) (citing 29 C.F.R. § 1614.105(a)(1)); *Bridges v. Astrue*, 2014 WL 1281158, *15 (E.D. Pa. 2014) (citing *Winder*); *see also* 29 C.F.R. § 1614.103(a) (referring to, among other things, complaints of employment discrimination and retaliation prohibited by Title VII, ADEA, and Equal Pay Act).  "This 45-day time limit operates akin to a statute of limitations: a claim brought more than 45 days after the date it accrued will be barred."  *Id.* (citing *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997)); *Bridges*, 2014 WL 1281158, at *15.

Here, Count I of plaintiff's Complaint – racial discrimination under Title VII – involves jobs ultimately obtained by Employee 1 ("E1") and Employee 2 ("E2"), respectively.  *See* Oral Arg. 4-6.  Plaintiff acknowledges that she did not contact an EEO counselor until March 8, 2010, *id.* at 14 (*see also* JA 1194), and she does not specifically dispute that she did not contact an EEO counselor within 45 days of the time she was aware or should have been aware that she was not selected, *see, e.g.,* Oral Arg. at 6.  The dispute here focuses on whether the operative date on which the 45-day period began to run was when: (a) plaintiff became aware or should have become aware that she was not selected to fill the available position; **or** when she is deemed to have had reasonable suspicion that she had been discriminated against.  *See, e.g., id.* ("Of course, the timeliness does apply to the race discrimination claims related to E1 and E2, but the problem is what is the standard."); *see also Winder*, 528 Fed. Appx. at 255.

To the extent that plaintiff challenges defendant's selection of E1 instead of plaintiff for the position of GS-13 ADR Mediator in Philadelphia,[10] the alleged misrepresentations made by plaintiff's supervisor occurred in November 2008 and the selection of E1 for the position (and thus plaintiff's non-selection) occurred in April of 2009 (JA 927).  The applicable 45-day period expired no later than in or about June 2009, and again, plaintiff acknowledges that she did not

---

[10]Plaintiff did not apply for this position, but she contends that she was discriminated against in that defendant discouraged her from applying by making misrepresentations about the possibility of her being selected for the position.  Defendant contended at oral argument, *see* Oral Arg. 33, that since, among other things, plaintiff did not apply for the position that E1 was ultimately awarded, and nothing prevented plaintiff from submitting an application even if it might have been rejected, plaintiff cannot satisfy a "prima facie case of discrimination by showing [she] actually applied for the job."  *See Lockamy v. Truesdale*, 182 F. Supp.2d 26, 35-36 (D. D.C. 2001) (in granting summary judgment in favor of employer on plaintiff's Title VII claim, Court rejected plaintiff's claim as a "deterred non-applicant.").  In any event, as explained *infra*, plaintiff's claims involving the position E1 was awarded are dismissed based on the expiration of the aforementioned 45-day time limit.

contact an EEO counselor until March 8, 2010, well after the 45-day period expired. *See* Oral

Arg. 14 (*see also* JA 1194).  With respect to plaintiff's challenge to defendant's selection of E2

for the available Supervisory General Attorney position of ADR Coordinator for the Philadelphia

District, the 45-day limitations period began to run in early November 2009, when plaintiff

became aware that she was not selected (and that E2 was selected) for the position (JA 1014,

1022), and plaintiff's limitations period for contacting an EEO counselor expired for that action

in December 2009.

In *Winder*, our Court of Appeals affirmed the District Court's grant of summary judgment

in favor of the federal employer and against the plaintiff who claimed discrimination on the basis

of gender and race in violation of Title VII.  *Winder*, 528 Fed. Appx. at 254.  In granting

summary judgment, the District Court concluded that the plaintiff had not timely contacted an

EEO counselor about her discrimination claim.  *Id.*  In affirming, the Court of Appeals found that

the 45-day limitations period began to run on "the date [the plaintiff] discovered that [the human

resources manager] was not going to promote her to the . . . position."  *Id.* at 255 (citing *Oshiver*

*v. Levin, Fishbein, Sedran, & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994) (limitations period

begins to run when "the plaintiff has discovered or, by exercising reasonable diligence, should

have discovered (1) that he or she has been injured, and (2) that this injury has been caused by

another party's conduct"));  *see Oshiver*, 38 F.3d at 1386 (citing *Bohus v. Beloff*, 950 F.2d 919,

925 (3d Cir. 1991)).  Although the plaintiff in *Winder* argued that her injury was not complete

until the date the selected employee was hired, citing precedential decisions the Third Circuit

pointed out that "it is well-settled that 'a claim accrues in a federal cause of action upon

awareness of actual injury, ***not* upon awareness that this injury constitutes a legal wrong**.'"

*Winder*, 528 Fed. Appx. at 255 (citing *Oshiver*, 38 F.3d at 1385, 1391 (holding that the statute of limitations began to run on the date of the plaintiff's termination, ***not on the date she discovered that a male was hired in her place***) (emph. added); *Wastak v. Lehigh Valley Hlth. Network*, 342 F.3d 281, 287 (3d Cir. 2003) (holding that plaintiff's injury was complete and discovered when he was terminated, ***not when he learned that he was replaced by a younger worker***)); *see Bridges*, 2014 WL 1281158, at *16.

Similarly, here plaintiff contacted an EEO counselor after the 45-day limitations period had expired.  Accordingly, Count I is dismissed for failure to comply with the applicable 45-day period.  *See id.* (citing *Oshiver*, 38 F.3d at 1385, 1391; *Wastak*, 342 F.3d at 287; *Bridges*, 2014 WL 1281158, at *16.[11]

Plaintiff's Count IV of the Complaint – age discrimination (disparate treatment) under the ADEA, *see* Pl.'s Compl. ¶¶ 204-212 – also involves the aforementioned job ultimately obtained by E2.[12]  *See* Oral Arg. 16-17.  The parties make the same argument involving the position obtained by E2.  *Id.*  Accordingly, in that plaintiff contacted an EEO counselor after the 45-day limitations period had expired, Count IV is dismissed as time-barred.  *See Winder*, 528 Fed.

---

[11]Although the doctrine of equitable tolling allows a court to stop the limitations period from running after a claim has accrued, both the Supreme Court and the Third Circuit have recognized that the doctrine should be applied "only sparingly."  *Winder*, 528 Fed. Appx. at 256 (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 591 (3d Cir. 2005).  Plaintiff has the burden of establishing that the equitable tolling doctrine applies.  *Id.* at 591 (citing *Courtney v. LaSalle Univ.*, 124 F.3d 499, 505 (3d Cir. 1997)); *see Winder*, 528 Fed. Appx. at 256.  In this case, plaintiff fails to demonstrate circumstances warranting equitable tolling of the 45-day limitations period.

[12]Defendant does not challenge plaintiff's Counts II and III (gender discrimination and Equal Pay Act claim, respectively), *see* Pl.'s Compl. ¶¶ 187-203, on the basis of failure to timely contact an EEO counselor.  *See* Oral Arg. 14-16.

Appx. at 255 (citing *Oshiver*, 38 F.3d at 1385, 1391); *Wastak*, 342 F.3d at 287; *Bridges*, 2014 WL 1281158, at *16.

With regard to plaintiff's Count VI (retaliation), *see* Pl.'s Compl. ¶¶ 218-225, defendant requests that the portion of plaintiff's claims relating to retaliation by denial of a 4/10 work schedule, *see supra* note 4, and "telework," *see* Oral Arg. 18, be similarly dismissed as untimely under the 45-day rule, *id.* At oral argument, plaintiff confirmed that she is no longer pursuing retaliation claims based on the 4/10 schedule and telework. *See* Oral Arg. 19. Accordingly, to the extent that Count VI alleges independent claims of retaliation based on the denial of a 4/10 work schedule and telework, defendant's motion is granted.[13]

### 4.   PLAINTIFF'S COUNT II - GENDER DISCRIMINATION UNDER TITLE VII

Count II alleges that plaintiff was discriminated against based on her gender in that defendant allowed Employee 12 ("E12"), a male ADR Mediator in the Charlotte District, to "conduct federal sector mediations" and "perform outside mediations," which allegedly "enhanced his professional development as well as his income-earning potential post-retirement," but failed to provide plaintiff such opportunities. *See* Pl.'s Compl. ¶¶ 189(c)-(d). In support of her motion, defendant argues that plaintiff "cannot make out a *prima facie* gender discrimination claim based upon [E12's] performance of federal-sector mediations." *See* Def.'s Br. 15-16. At oral argument, plaintiff's counsel confirmed that plaintiff is no longer pursuing her claim on the federal sector mediations issue. *See* Oral Arg. 64-65. Accordingly, defendant's motion is

---

[13]Defendant concedes that the remaining claims of retaliation are not barred by the 45-day rule. *See* Oral Arg. 19-20.

granted with regard to Count II as it relates to defendant's alleged failure to allow plaintiff to work on federal sector mediations.  *See id.*

Plaintiff is, however, pursuing her gender discrimination claim as it relates to defendant allegedly restricting plaintiff from engaging in "outside employment,"[14] i.e. "perform[ing] outside mediations," but allowing E12 to do so.  *See* Pl.'s Compl. ¶¶ 64-71.  As the parties acknowledge, claims under Title VII are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  To prevail on a Title VII claim of gender discrimination, a plaintiff must first establish a *prima facie* case by showing that she "suffered an adverse employment action . . . under circumstances that could give rise to an inference of intentional discrimination" on the basis of gender.  *See Barker v. Boeing Co.*, 2014 WL 1976894, *4 (E.D. Pa. 2014) (citing *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)) (applying the same test to a race discrimination claim).  "[T]here is a low bar for establishing a prima facie case of employment discrimination."  *Scheidemantle v. Slippery Rock Univ.*, 470 F.3d 535, 539 (3d Cir. 2006).  If the plaintiff makes out a *prima facie* case, the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action.  *McDonnell Douglas*, 411 U.S. at 802.  Once the employer does this, the burden of production "rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual."  *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 271 (3d Cir. 2010) (quoting *Fuentes v. Perskie*, 32 F.3d

---

[14]The parties appear to agree that, as used in this case, "outside employment" refers to work that EEOC employees are permitted to perform on their own time, and it is work for which the employee is paid by an entity or individual other than the federal government.  *See, e.g.,* Oral Arg. 68; Pl.'s Dep. 112-13 (JA 284-85); CBA § 43.01 (JA 732-33); Def.'s Statement of Undisputed Facts (Doc. 40) ¶ 459.

759, 763 (3d Cir. 1994)).

In this case, plaintiff has established a *prima facie* case of gender discrimination by pointing to evidence that she "suffered an adverse employment action . . . under circumstances that could give rise to an inference of intentional discrimination" on the basis of gender.  *See Barker*, 2014 WL 1976894, at \*4 (citing *Makky*, 541 F.3d at 214).  In particular, plaintiff points to evidence that E12, a male mediator in the Charlotte District, was granted approval to engage in outside mediations (JA 1303-04, 1612, 140, 105, 181, 184-85, 192, 202-04), whereas plaintiff was required to obtain "prior written approval" from her District Director before each separate instance of her engaging in outside mediations (JA 1358-59, 1600, 295).  Defendant argues that the gender-neutral reason the District Director permitted E12 to pursue outside employment was due to E12's "productivity, whether [the Director] did that rightly or wrongly, that's what he did."  *See* Oral Arg. 66.  Defendant further suggests that the evidence indicates that "[t]his guy (E12) was the most productive down there."  *Id.* (parenthetical added).  In arguing that the gender-neutral reason given by defendant is merely a pretext, plaintiff points to evidence that such a purported reason is suspect in that, among other things, evidence indicates that productivity is not a criterion for allowing someone to engage in outside employment, but rather the possibility of unethical conduct is the only legitimate consideration on the issue of allowing outside employment.  *Id.* at 67-68.  This is particularly true, plaintiff points out, in light of the fact that outside employment is performed only during hours when an employee is not working for defendant, i.e. on days off.  *Id.* at 68.  Plaintiff further points out that the evidence reflects plaintiff's productivity had not significantly changed on a later occasion when defendant approved plaintiff for outside employment, indicating that productivity was not the actual reason

16

for defendant's decision regarding allowing plaintiff to perform outside employment. *Id.* at 70.

Considering the evidence in the light most favorable to the non-moving party, defendant's

summary judgment motion is denied with regard to plaintiff's Count II (gender discrimination) as

it relates to **outside employment** in that there is a genuine issue of material fact for trial. *See*

*Anderson*, 477 U.S. at 250, 256.  To the extent that defendant's motion requests summary

judgment on plaintiff's Count II as it relates to **federal mediations**, the motion is granted.


### 5.  PLAINTIFF'S COUNT VI - RETALIATION

To establish a *prima facie* retaliation case, plaintiff must show that: (1) she engaged in a

protected activity; (2) defendant took an adverse employment action after or contemporaneous

with the protected activity; and (3) the protected activity and the adverse employment action were

causally linked. *See Moore v. Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006); *Weston v. Pa.*, 251

F.3d 420, 430 (3d Cir. 2001).  On the second element, plaintiff must show that the alleged

retaliatory actions were "materially adverse" to her in a way that would have "dissuaded a

reasonable worker from making or supporting a charge of discrimination."  *See Burlington N.*

*and Santa Fe R.R. Co. v. White*, 548 U.S. 53, 64, 68 (2006).  On the third element, plaintiff must

establish that her protected activity was a "but for" cause of the adverse employment action.

*Verma v. Univ. of Pa.*, 533 F. Appx. 115, 119 (3d Cir. 2013) (applying *Univ. Of Tex. Sw. Med.*

*Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013)).  Her retaliation claim is subject to the

aforementioned *McDonnell Douglas* burden-shifting framework.  *Sanborn v. Postmaster Gen.*,

431 F. Appx. 188, 190 (3d Cir. 2011) (citing *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir.

2007)).

Initially, to the extent that plaintiff's retaliation claims allege irregularity with the processing of her EEO complaint, such claims are not actionable under Title VII and are barred under 29 C.F.R. § 1614.107(a)(8).  *See Packer v. Garrett*, 735 F. Supp. 8, 9-10 (D. D.C. 1990) ("The only 'right' [Title VII] establishes is the right to be free of discrimination.  This interest is wholly preserved, even if the EEOC errs in its processing of the charge, by the right to a trial *de novo*."), *aff'd*, 959 F.2d 1102 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 1036 (1992); *Young v. Sullivan*, 733 F. Supp. 131, 132 (D. D.C. 1990) ("Title VII creates only a cause of action for discrimination .  It does not create an independent cause of action for the mishandling of an employee's discrimination complaints").

Plaintiff alleges that certain actions of Director Reuben Daniels were adverse and retaliatory.  To the extent that her Complaint alleges independent claims challenging restrictions on plaintiff working a 4/10 schedule and defendant arbitrarily lowering plaintiff's 2010 performance evaluation, for reasons explained above, defendant's motion is granted since plaintiff elected to resolve those claims through the negotiated grievance process.  Furthermore, plaintiff's counsel acknowledged at oral argument that plaintiff is not pursuing these claims, as well as independent claims challenging restrictions on telework.[15]  Accordingly, defendant's request to dismiss plaintiff's claims arising out of the rescission of her 4/10 schedule or telework and the alleged arbitrary lowering of her year 2010 performance ratings is granted.

---

[15]In particular, plaintiff's counsel acknowledged that plaintiff is no longer proceeding on these claims as "straight retaliatory act[s], but we will be referring to [them] as antagonistic course of conduct. . . . Again, not a retaliatory act, but evidence that corroborates later facts."  *See* Oral Arg. 82-83.  Plaintiff also specifically confirmed that she is no longer pursuing retaliation claims related to telework.  *See* Oral Arg. 19 (conceding claims related to 4/10 schedule and telework as independent retaliation claims).

18

However, with respect to plaintiff's remaining retaliation claims based on defendant's actions toward her related to permission to perform outside employment, intentional manipulation of plaintiff's case inventory, and an antagonistic course of conduct, *see, e.g.,* Oral Arg. 83-100, defendant's motion is denied.  As with plaintiff's gender discrimination claim discussed above, viewing the evidence in favor of the non-moving party, plaintiff has established a *prima facie* case of retaliation by pointing to evidence supporting acts of retaliation.  While defendant has articulated legitimate, nondiscriminatory reasons for the adverse employment actions, plaintiff has pointed to sufficient evidence to indicate that defendant's explanation is pretextual.  Accordingly, considering the evidence in the light most favorable to the non-moving party, there are genuine issues of material fact for trial, and defendant's summary judgment motion is denied with regard to plaintiff's Count VI (retaliation) as it relates to outside employment, intentional manipulation of plaintiff's case inventory, and an antagonistic course of conduct.  *See Anderson*, 477 U.S. at 250, 256.

**6. CONCLUSION**

Defendant's motion is denied with respect to Count II (gender discrimination) of plaintiff's Complaint to the extent plaintiff claims that defendant improperly restricted plaintiff from performing outside work.  Defendant's motion is denied with respect to plaintiff's Count VI (retaliation) to the extent plaintiff claims that defendant improperly restricted her from performing outside employment, manipulated plaintiff's case inventory, and acted in an antagonistic course of conduct.  Defendant's motion is granted in all other respects, and plaintiff's motion for partial summary judgment is denied.

19

In particular, plaintiff's pay-based claims, her claims alleging impermissible restrictions on a 4/10 work schedule, and her claims of arbitrary lowering of 2010 performance evaluations are dismissed.  She irrevocably elected to resolve those claims through the negotiated grievance procedure.  In addition, plaintiff confirmed at oral argument that she is no longer pursuing Count V (age discrimination - disparate impact), and she conceded the dismissal of any independent claims based on restrictions on a 4/10 work schedule and telework.  Therefore, these claims are also dismissed.  With respect to plaintiff's claims challenging defendant's failure to select her for particular positions ("non-selection claims"), defendant's motion is granted in that plaintiff failed to contact an EEO counselor within the required 45-day period.

With regard to plaintiff's Count II (gender discrimination), defendant's motion is denied with respect to plaintiff's claim that defendant restricted plaintiff from performing outside employment.  In all other respects, defendant's motion is granted with respect to Count II. Plaintiff has conceded the dismissal of Count II as it relates to defendant restricting plaintiff from performing federal mediations.

With respect to plaintiff's Count VI (retaliation), defendant's motion is denied as it relates to plaintiff's claims based on restrictions put on plaintiff performing outside employment, manipulation of plaintiff's case inventory, and an antagonistic course of conduct.  Defendant's motion, as it relates to Count VI, is granted in all other respects.[16]

An appropriate Order follows.

---

[16]In support of plaintiff's Motion for Partial Summary Judgment, plaintiff argues that summary judgment should be granted in her favor on her claims of race and age discrimination and on her pay-based claims.  For the reasons explained above, these claims are dismissed.